**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |
|---|---|
| McKENZIE HOPKINS, | * |
| Petitioner, | * |
| v. | *     Case No.: PWG-13-3336 |
| PATRICIA GOINS-JOHNSON, WARDEN, et al. | * |
| Respondents. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Petitioner has sought a writ of habeas corpus on the grounds that his mental disabilities and mental health issues prevented him from entering a voluntary and knowing plea and that he received ineffective assistance of counsel. Respondents have entered a limited response arguing that the petition is time-barred under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"). Petitioner acknowledges that his petition was untimely, but argues that the statute of limitations should be equitably tolled because of his significant mental disabilities and his efforts to seek timely post-conviction relief. I agree with Petitioner and find that the limitations period is equitably tolled.

**I.     BACKGROUND**

Petitioner McKenzie Hopkins is an inmate in Patuxent Institution in Jessup, Maryland. Hopkins had been charged in four separate cases in the Circuit Court for Baltimore City and entered a guilty plea in all four cases on May 24, 2007. *See* Case Information Sheets, Limited

Answer to Petition for Writ of Habeas Corpus and Order to Show Cause ("Limited Resp.") Ex. 1, ECF No. 25-1. He was sentenced to life imprisonment, all but thirty-five years suspended. Plea Hr'g Tr. 34:2–14, Mem. of Law in Supp. of Pet. for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody ("Pet'r's Mem.") Ex. 12, ECF No. 22-7. Hopkins did not seek a direct appeal. Case Inquiry 3, Limited Resp. Ex. 1, ECF No. 25-1.

On July 14, 2011, he filed a *pro se* petition for post-conviction relief in the Circuit Court for Baltimore County. Pet. for Post-Conviction Relief, Pet'r's Mem. Ex. 14, ECF No. 22-8. Following a hearing on February 10, 2012, Case Inquiry 4, Hopkins's petition was denied on April 16, 2012, *id.* at 5. He sought leave to appeal to the Court of Special Appeals of Maryland on May 14, 2012, Appl. for Leave to Appeal from the Denial of Post Conviction, Pet'r's Mem. Ex. 17, ECF No. 22-11, which was denied on January 25, 2013, and the mandate issued February 25, 2013. Case Inquiry 5; Mandate, *Hopkins v. State*, No. 00594 (Md. Ct. Spec. App. Feb. 25, 2013), Limited Resp. Ex. 2, ECF No. 25-2.

Hopkins filed his initial petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on November 7, 2013, dated November 3, 2013. Pet., ECF No. 1. Although his initial petition was difficult to understand, Hopkins claimed that "none of the lawyers that [he] had even considered the fact of [his] mental illness," Pet. 1, and attached a report suggesting that he may not have been competent to stand trial or enter a plea, Levinson Report, ECF No. 1-2.

After initially seeking to have Hopkins supplement his petition, Order, ECF No. 2, I found that his mental health issues necessitated the appointment of counsel under the Criminal Justice Act and appointed counsel on January 13, 2014, Order, ECF No. 4. After a thorough investigation, Hopkins's appointed counsel filed a supplemental Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody ("Supp. Pet."), ECF No. 18,

on September 22, 2014, supported by a sealed memorandum ("Pet'r's Mem."), ECF No. 19–1. On October 6, 2014, I ordered Respondents Patricia Goins-Johnson, Warden of the Patuxent Institution, and Douglas F. Gansler, then-Attorney General of the State of Maryland, to respond.[1]

On November 25, 2014, Respondents filed their Limited Response, ECF No. 30, arguing that Hopkins's petition should be dismissed as time-barred under the Anti-Terrorism and Effective Death Penalty Act ("ADEPA") as set forth in 28 U.S.C. § 2244(d). Though couched as an answer, the Limited Response sounds in a motion to dismiss and will be construed as such. Hopkins responded ("Pet'r's Reply") by acknowledging that his petition was filed outside the one-year statute of limitations, but arguing that his claims should be subject to equitable tolling.

## II.     LIMITATIONS PERIOD UNDER AEDPA

Pursuant to 28 U.S.C. § 2244(d),

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>   (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>   (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>   (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>   (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

---

[1] Pursuant to Fed. R. Evid. 201, I take judicial notice that the Attorney General of the State of Maryland now is Brian E. Frosh, and will order the Clerk to substitute him for Gansler as the proper party pursuant to Fed. R. Civ. P. 25(d).

Under § 2244(d)(2), "the entire period of state post-conviction proceedings, from initial filing to final disposition by the highest state court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review), is tolled from the limitations period." *Taylor v. Lee*, 186 F.3d 557, 561 (4th Cir. 1999).

However, the AEDPA statute of limitations is not jurisdictional, and is subject to equitable tolling where a petitioner "shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 645, 649 (2010). In the Fourth Circuit, "equitable tolling is appropriate in those 'rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result.'" *Whiteside v. United States*, 775 F.3d 180, 184 (4th Cir. 2014) (en banc) (quoting *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2004) (en banc)).

### III. DISCUSSION

As a threshold matter, Hopkins does not argue that his filing is timely under the AEDPA statute of limitations. Even excluding the approximately one year during which his petition for post-conviction relief was pending, well over a year elapsed between the expiration of his time to appeal his conviction on June 23, 2007 and the date that he mailed his current petition on November 3, 2013. Rather, Hopkins argues that equitable tolling is appropriate because he lacked the mental capacity to file a timely petition for a writ of habeas corpus despite his diligent efforts to do so. Respondents have not addressed this argument or sought to do so.

Mere ignorance of the statute of limitations does not justify equitable tolling and, "[a]s a general matter, the federal courts will apply equitable tolling because of a petitioner's mental condition only in cases of profound mental incapacity." *United States v. Sosa*, 364 F.3d 507, 513

(4th Cir. 2004) (citing *Grant v. McDonnell Douglas Corp.*, 163 F.3d 1136, 1138 (9th Cir. 1998)). The Ninth Circuit has suggested that these cases are confined to those involving "exceptional circumstances, such as institutionalization or adjudged mental incompetence of the litigant." *Grant*, 163 F.3d at 1138. And the Fourth Circuit has found no error where the district court declined to toll the limitations period for an person institutionalized because of his mental illness in the absence of any specific indication that the "mental illness *actually caused* his procedural default." *See Farabee v. Johnson*, 129 F. App'x 799, 804 (4th Cir. 2005). In *Farabee*, it was fatal that petitioner had not shown that his mental illness "interfered with his ability to appreciate his litigation position or to make rational decisions concerning the litigation during the entirety of the relevant time periods," "to consult with counsel, file pleadings, or otherwise comply with state procedural requirements." *Id.*

Here, two separate psychological examiners expressly have found that Hopkins was unable to comprehend the proceedings against him. *See* Levinson Report 3 (finding that Hopkins "did not know the charges against him," "does not know if he has a lawyer and has no idea what to plead or what they mean"); James Report 1–4 ("it is highly unlikely that he possessed the comprehension abilities necessary to competently enter a plea"), Supp. Pet. Ex. 24, ECF No. 21-11. Further, Petitioner's expert, Joette James, Ph.D., found that he has the reading and spelling ability of a first-grader. James Report 11. An examiner from the Medical Services Division of the Circuit Court for Baltimore City reached the "opinion, to a reasonable psychological certainty, that Mr. Hopkins is Possibly Not Competent to stand trial in that he cannot understand the nature and object of the proceedings against him, or assist in his own defense," Letter from Jay I. Levinson, Ph.D. to the Court (Aug. 30, 2006), Pet. Ex. 1, ECF No. 1-

2, and Dr. James reached a similar conclusion, James Report 4.  And the effects of his limited intelligence may have been further exacerbated by mental illness.  *See id.* at 5.

Indeed, it is precisely this argument—that he was not competent to participate in his own defense or enter a plea at the time that he did so—that undergirds Hopkins's petition.  Having adequately pleaded a colorable claim on those grounds, it would be perverse to find that those same disabilities are insufficient to excuse his failure to seek post-conviction relief in a timely manner.  There is every indication that Hopkins's disabilities have persisted throughout the pendency of his case, and his inability to comprehend legal issues, compounded by his difficulties in reading and writing, appear likely to have prevented him from filing a timely petition.  *See Nara v. Frank*, 264 F.3d 310, 320 (3d Cir. 2001), *overruled in part on other grounds by Carey v. Saffold*, 536 U.S. 214 (2002).

Hopkins also has pursued his rights diligently in light of his limitations.  Exhibits provided by Hopkins show that he had written letters to the Office of the Public Defender ("OPD") in or around April, May, July, and October 2008, twice in or around March 2010, and once more in December 2010.  *See* OPD Letters, Pet'r's Reply Ex. A, ECF No. 32-1.  Although OPD eventually advised him to file his own petition *pro se* in 2010, *see* OPD Letters 11–12, this only came after Hopkins had received numerous assurances that OPD intended to pursue postconviction relief for him, *see* OPD Letters, and after the AEDPA limitations period already had run.  For someone who had trouble understanding whether he had a lawyer during his initial criminal case, *see* Levinson Report 3, and who struggles to read and write, *see* James Report 3, Hopkins's repeated letters to OPD are nothing short of impressive.  Nor is it likely that Hopkins

could have filed a coherent petition on his own.[2] First, his mental disabilities likely precluded him from doing so and, in fact, Hopkins has represented that he was able eventually to file his petition and his notice of appeal only by seeking the help of another inmate. Pet'r's Reply 13–14. Further, OPD not only did not help him to file his post-conviction petition, but it actually appears to have delayed him from so doing because he did not receive the Levinson Report—which contained the crucial finding that he likely was not competent to enter a plea or to stand trial—from OPD until at least late 2011. OPD Letters 17.

     Hopkins also seeks equitable tolling based on attorney misconduct, relying on "gross attorney neglect by Mr. Hopkins's Lawyers," relying heavily on *Holland*. Pet'r's Reply 16–17. Because I already have found that Hopkins is entitled to equitable tolling, I need not reach this issue. However, I do note that OPD failed to provide Hopkins with documents necessary to file a complete petition for post-conviction review until long after the AEDPA limitations period had passed and, in advising him of its intention to assist with post-conviction relief within the period required under state law, never advised him that he would lose the opportunity to seek federal habeas review in the interim. *See* OPD Letters. Though well short of the protracted pattern of gross neglect at issue in *Holland*, 560 U.S. at 637–43, or "an extraordinary failure by the attorney to provide reasonably competent legal work," *United States v. Terrell*, 405 F. App'x 731, 732 (4th Cir. 2010), this nevertheless raises some serious concerns about the quality of information and representation that Hopkins was provided by his counsel.

---

[2] Indeed, incoherence of the pro se Petition he filed in this Court was part of the reason why I found that the appointment of counsel was necessary.

## IV. CONCLUSION

Accordingly, Respondents' Limited Answer to Petition for Writ of Habeas Corpus and Order to Show Cause, construed as a motion to dismiss, will be DENIED, and the limitations period under AEDPA is equitably tolled to deem the filing of Petitioner's Petition as timely.

The Clerk WILL SUBSTITUTE Brian E. Frosh, Attorney General of the State of Maryland, for Respondent Douglas F. Gansler, pursuant to Fed. R. Civ. P. 25(d).

Within thirty (30) days, Respondents SHALL SHOW CAUSE why Petitioner's writ should not be granted, and in doing so, strictly shall comply with Rule 5 of the Rules Governing Section 2254 Cases.

A separate order shall issue.

Dated: <u>July 7, 2015</u>                               /S/
                                                    Paul W. Grimm
                                                    United States District Judge
dsy