IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| McKENZIE HOPKINS, | : |
|     Petitioner, | : |
| v. | :   CIVIL ACTION NO. PWG-13-3336 |
| PATRICIA GOINS-JOHNSON, et al., | : |
|     Respondents. | : |

## MEMORANDUM OPINION

McKenzie Hopkins, an inmate confined at the Patuxent Institution ("Patuxent") in Jessup, Maryland, seeks to attack a 2006 conviction for which he remains confined within the Department of Corrections. Pet., ECF No. 1. Given concerns regarding Hopkins's post-incarceration mental health status, I appointed counsel pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A, to represent him. ECF No. 4.

Hopkins presents two grounds in support of his request for a writ of habeas corpus: (1) his trial counsel, Thomas Kane and Robert D. Cole, Jr., were ineffective for failing to investigate his mental health and pursue an independent evaluation of his competence to stand trial and criminal responsibility; and (2) he did not knowingly, voluntarily, and intelligently enter his guilty plea. Supp. Pet. ¶ 15, ECF No. 18.

In a Limited Answer, respondents argued that the Petition is time-barred under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"). Ltd. Answer ¶ 6, ECF No. 25. Hopkins acknowledged that his petition was untimely, but argued that the statute of limitations should be equitably tolled because of his significant mental disabilities and efforts to seek timely post-conviction relief. Pet'r's Resp. 6–11, ECF No. 32. I found the limitations period equitably tolled, and required a response on the merits. Mem. Op. 1, ECF No. 33.

Respondents now argue that Hopkins's Petition, as supplemented, should be dismissed because: (1) Hopkins has not exhausted his state court remedies with respect to his first claim of error; and (2) Hopkins has procedurally defaulted his second claim. Answer 12–13, 21–22, ECF No. 37. Alternatively, respondents contend that the petition should be denied on the merits.[1] *Id.* at 19–23. After reviewing the filings, I find no need for an evidentiary hearing. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts*; *see also* 28 U.S.C. § 2254(e)(2). For reasons set forth herein, the Petition is DENIED and DISMISSED.

## Background and Procedural History

The obsessive and escalating level of violence leading to Hopkins's incarceration cannot be overstated. On four occasions, Hopkins attacked Jernita Brown, the mother of his three children. In the first incident, Hopkins grabbed Brown around the neck, bit her, and struck her after she told him she wanted to end their relationship. Plea Hr'g Tr. 30:2–9, Pet'r's Mem. Ex. 12, ECF No. 22-7. During the second incident, Hopkins approached Brown from behind, attempting to force her into his vehicle and to choke her. *Id.* at 30:16–20. Hopkins next confronted Brown as she was on her way to testify against him for a previous assault and this time succeeded in dragging her into his car, where he beat her before crashing the vehicle. *Id.* at 31:5–19. After the crash, Hopkins pulled the unconscious Brown from the car to resume beating her in the street. *Id.* at 31:19–24. The incident was witnessed by others. *Id.* at 31:25. On May 1, 2006, Hopkins approached Brown as she walked to work, chased her into her home, and shot her multiple times, rendering Brown paraplegic. *Id.* at 32:19–25, 33:3–4. Brown's mother witnessed the shooting and attempted to thwart it. *Id.* at 32:25–33:2.

---

[1] Respondents also continue to assert that the Petition is untimely, despite the Court's determination that the statute of limitations should be equitably tolled. Mem. Op. 1.

Hopkins's two defense attorneys filed a notice of incompetency to stand trial and entered a plea of not criminally responsible. Pet'r's Mem. Ex. 3, ECF No. 22-1; Pet'r's Mem. Ex. 4, ECF No. 22-2. They also filed a request for mental examination to determine whether Hopkins was competent to stand trial or criminally responsible for his behavior. Post-Conviction Hr'g Tr. 33:10–19, Pet'r's Mem. Ex. 15, ECF No. 22-9. The trial court directed the Maryland Department of Mental Health and Hygiene to evaluate Hopkins. Order for Examination, Pet'r's Mem. Ex. 5, ECF No. 22-3; Order for Examination as to Competency and Responsibility, Pet'r's Mem. Ex. 7, ECF No. 22-5. Dr. Jay I. Levinson performed the evaluation, determined that Hopkins was possibly not competent, and requested that Hopkins be transferred to the Clifton T. Perkins Hospital Center for further evaluation. Levinson Report, Pet'r's Mem. Ex. 8, ECF No. 21-3. Neutral evaluators at Perkins concluded in an in-depth report that Hopkins was competent to stand trial and that he could be held responsible for his criminal actions. Perkins Report 12–13, Pet'r's Mem. Ex. 10, ECF No. 21-5.

On May 24, 2007, after pleading guilty in the Circuit Court for Baltimore City to two counts of first-degree assault, second-degree assault, attempted first-degree murder, and use of a handgun in a crime of violence, Hopkins was sentenced to life imprisonment with all but 35 years suspended. Supp. Pet. ¶ 3. He did not file an application for leave to appeal his conviction in the Court of Special Appeals of Maryland or seek further appellate review. *Id.* ¶¶ 8–10.

Hopkins filed a *pro se* Petition for Post-Conviction Relief in the Circuit Court for Baltimore City on July 14, 2011, raising six grounds for relief. Pet. Post-Conviction Relief, Pet'r's Mem. Ex. 14, ECF No. 22-8. After a hearing, the Circuit Court denied the petition on April 16, 2012. Statement & Order 7, Pet'r's Mem. Ex. 16, ECF No. 22-10. On May 14, 2012, Hopkins filed an application for leave to appeal the denial in the Court of Special Appeals, which

summarily denied the application for leave on January 25, 2013. Md. Ct. Spec. App. Docs., Ltd. Answer Ex. 2, ECF No. 25-2. The court's mandate issued on February 25, 2013. *Id.*

## Threshold Considerations

### Exhaustion

Respondents assert that Hopkins's claim that his trial counsel were ineffective is not exhausted because it relies substantially on evidence that was not presented to the state post-conviction court. Answer 7. Thus, in Respondents' view, the Petition is a mixed petition and should be dismissed unless Hopkins withdraws the unexhausted claim. *Id.* at 13. Alternatively, Respondents argue that the Petition should be denied on the merits. *Id.* at 19, 22.

As a matter of comity, a federal habeas petitioner generally must exhaust claims in state court; failure to exhaust a claim requires dismissal by the federal court. *See* 28 U.S.C. § 2254(b)(1)(A); *Granberry v. Greer*, 481 U.S. 129, 134 (1987); *Rose v. Lundy*, 455 U.S. 509, 515–19 (1982). The exhaustion requirement is satisfied when (1) a petitioner has fairly presented all claims in state court, or (2) if no state remedies are currently available to the petitioner. *See Gray v. Netherland*, 518 U.S. 152, 161 (1996). Fair presentation requires the petitioner to present the same claims to all appropriate state courts. *See Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Both the operative facts and the controlling legal principles must be presented to the state court. *Picard v. Connor*, 404 U.S. 270, 277 (1971). This requirement is designed to give "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999), and is satisfied by presenting the claim to the state's highest court on either direct or collateral review. *Id.* at 844.

Hopkins contends that his ineffective assistance of counsel claim is exhausted. Pet'r's

4

Reply 2–9, ECF No. 38. He argues that he presented both the operative facts and the controlling legal principles of his ineffective assistance of counsel claim to the state post-conviction court. *Id.* at 5. He further argues that the additional information provided to this court "merely supplements the claim he already presented to the state post-conviction court," and that "[s]upplementary evidence does not render a claim unexhausted." *Id.*

I agree. Although Hopkins presents additional evidence in support of the claim to this Court, he fairly presented the claim to the state courts. Hopkins presented the relevant facts and pertinent legal principles to both the Circuit Court and the Court of Special Appeals. Pet. Post-Conviction Relief 8–10, Pet'r's Mem. Ex. 14, ECF No. 22-8; App. for Leave to Appeal 7–10, Pet'r's Mem. Ex. 17, ECF No. 22-11. Moreover, Hopkins has not put forth any new legal theories or factual claims in this Court. Therefore, the ineffective assistance claim need not be dismissed as a "mixed" petition containing both exhausted and unexhausted claims. But because the Circuit Court adjudicated Hopkins's ineffective assistance claim on the merits, this court is limited to the record that was before the Circuit Court at the time it rendered its decision. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Accordingly, I will not consider additional evidence presented in the federal habeas petition. But before discussing the merits of Hopkins's ineffective assistance of counsel claim, I will first address the threshold matters concerning his claim that he did not knowingly, voluntarily, and intelligently enter his guilty plea.

<u>Procedural Default</u>

Respondents argue that Hopkins claim that he did not knowingly, voluntarily, and intelligently enter his guilty plea is procedurally defaulted. Answer 21–22. When a petitioner has failed to present a claim to the highest state court with jurisdiction to hear it, whether by failing to raise the claim in post-conviction proceedings or on direct appeal, or by failing to

timely note an appeal, the procedural default doctrine applies. *See Coleman v. Thompson*, 501 U. S. 722, 749–50 (1991) (failure to note timely appeal); *Murray v. Carrier*, 477 U.S. 478, 489–91 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U. S. 41, 46 (1972) (failure to raise claim during post-conviction); *Bradley v. Davis*, 551 F. Supp. 479, 481 (D. Md. 1982) (failure to seek leave to appeal denial of post- conviction relief). A procedural default may also occur where a state court declines "to consider the merits [of a claim] on the basis of an adequate and independent state procedural rule." *Yeatts v. Angelone*, 166 F.3d 255, 260 (4th Cir. 1999).

Where a state post-conviction court denies relief based upon a procedural default, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show (1) both cause for the default and prejudice that would result from failing to consider the claim on the merits, or (2) that failure to consider the claim on the merits would result in a miscarriage of justice, *i.e.* the conviction of one who is actually innocent. *See Carrier*, 477 U.S. at 495-96; *Breard v. Pruett*, 134 F.3d 615, 620 (4th Cir. 1997). "Cause" consists of "some objective factor external to the defense [that] impeded counsel's efforts to raise the claim in state court at the appropriate time." *Breard*, 134 F.3d at 620 (quoting *Carrier*, 477 U.S. at 488). "Petitioners who wish to use a claim of actual innocence as a gateway to raising an otherwise defaulted constitutional claim must demonstrate by a preponderance of the evidence that a reasonable juror could not have convicted the petitioner in light of the new evidence." *Buckner v. Polk*, 453 F.3d 195, 199–200 (4th Cir. 2006).

The state post-conviction court found Hopkins's second claim procedurally defaulted:

> Petitioner claims for the first time in his Petition that his guilty plea was involuntary. Under *Criminal Procedure Article § 7-106(b)(1)(i)(4)*, "an allegation of error is waived when a petitioner could have made but intelligently and knowingly failed to make the allegation . . . in an application for leave to

> appeal a conviction based on a guilty plea." Further, where a petitioner fails to make such an allegation, there is a "rebuttable presumption that the petitioner intelligently and knowingly failed to make the allegation." *CP § 7-106(b)(2)*. Finally, the "[f]ailure to make an allegation of error shall be excused if special circumstances exist . . . [and] [t]he petitioner has the burden of proving that special circumstances exist." *CP § 7-106(b)(1)(ii)*. Consequently, the Petitioner bears the burden to prove either that the alleged error was not waived, or that "special circumstances exist[ed] as to why he failed to allege the error in a prior proceeding." *Harris v. State*, 160 Md. App. 78, 110 (2004).
>
> The Court finds that the Petitioner has not met his burden. The trial court advised the Petitioner of his right to appellate review, *Pet'r Ex. 1 (hereinafter "Ex. 1"), Tr. 34:21-25*, and the Petitioner failed to file an appeal. At the post-conviction hearing, no evidence was offered either to rebut the presumption under *CP § 7-106(b)(2)* or to show the existence of special circumstances under *CP § 7-106(b)(1)(ii)*. The Court therefore dismisses this claim for relief.

Statement & Order 2–3 (alterations in original) (footnote omitted).[2]

Hopkins argues that this Court may reach the merits of his plea claim because (1) the

---

[2] Section 7-106 provides, in relevant part:

> (b)(1)(i) Except as provided in subparagraph (ii) of this paragraph, an allegation of error is waived when a petitioner could have made but intelligently and knowingly failed to make the allegation:
>
> ...
>
> 3. on direct appeal, whether or not the petitioner took an appeal;
>
> ...
>
> (ii) 1. Failure to make an allegation of error shall be excused if special circumstances exist.
> 2. The petitioner has the burden of proving that special circumstances exist.

(2) When a petitioner could have made an allegation of error at a proceeding set forth in paragraph (1)(i) of this subsection but did not make an allegation of error, there is a rebuttable presumption that the petitioner intelligently and knowingly failed to make the allegation.

Md. Code, Crim. P. § 7-106(b).

state post-conviction court misapplied Md. Code Ann. Crim. Proc. § 7-106 to bar Hopkins's claim; (2) the rule is not strictly enforced and therefore not an adequate state ground; and (3) he meets the cause-and-prejudice and miscarriage-of-justice exceptions to the procedural default rule. Pet'r's Reply 10.

First, I have no authority to entertain Hopkins's argument that the state post-conviction court misapplied § 7-106. "A basic tenet of federal *habeas* review is that a federal court does not have license to question a state court's finding of procedural default, if based upon an adequate and independent state ground. The federal court may only inquire into whether cause and prejudice exist to excuse that default, not into whether the state court properly applied its own law." *Barnes v. Thompson*, 58 F.3d 971, 974 n.2 (4th Cir. 1995); *see also Sharpe v. Bell*, 593 F.3d 372, 377 (4th Cir. 2010).

Next, Hopkins has not shown that the rule is an inadequate ground for the state post-conviction court's finding of a procedural default. An adequate state procedural bar is one that "is regularly or consistently applied by the state court." *Yeatts*, 166 F.3d at 260 (citing *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988)). The purpose of the adequacy inquiry is to prevent state courts from "avoid[ing] deciding federal issues by invoking procedural rules that they do not apply evenhandedly to all similar claims." *Hathorn v. Lovorn*, 457 U.S. 255, 263 (1982).

Hopkins argues that the discretionary nature of § 7-106's and text and related statutory provisions render it inconsistently applied. Pet'r's Reply 18–21. Specifically, § 7-106(b)(1)(ii)(1) provides that "[f]ailure to make an allegation of error shall be excused if special circumstances exist," and Hopkins observes that Maryland post-conviction and appellate courts have, in fact, exercised that discretion. Pet'r's Reply 18–19. He also argues that Md. Rule 8-131(a) confers further discretion to appellate courts by permitting them to hear claims

8

deemed waived by § 7-106. *Id.* at 19–20. Thus, Hopkins concludes that the rule is an inadequate ground to bar federal habeas review of his guilty plea.

Hopkins's conclusion is not persuasive. Hopkins has not shown that Maryland courts act inconsistently in identifying special circumstances under § 7-106. Just because state rules theoretically permit inconsistent application of a procedural bar does not mean that Maryland courts have in fact exercised their discretion in an inconsistent manner. Absent a showing of inconsistent application of a procedural rule, there is no concern that state courts are wielding the rule so as to avoid vindicating federal rights. *See Hathorn*, 457 U.S. at 263. Since Hopkins has provided no evidence of inconsistent application, he has failed to demonstrate that § 7-106 is not an adequate and independent state ground. The state post-conviction court therefore did not err in finding Hopkins's claim procedurally barred.

Having determined that Hopkins procedurally defaulted his guilty plea claim, I turn to his third argument, that his procedural default should be excused. Hopkins contends that he meets the cause-and-prejudice exception or, alternatively, that this Court's failure to consider the guilty plea claim would result in a fundamental miscarriage of justice. Pet'r's Reply 21–22. He argues that "[t]rial counsel's failure to file an application for leave to appeal in the Maryland Court of Special Appeals deprived Hopkins of direct review of his claim that his plea was involuntary" and that "Counsel's ineffectiveness constitutes 'cause' to excuse procedural default of this claim." Pet'r's Mem. 54, ECF No. 19-1; Pet'r's Reply 21. As for prejudice, Hopkins contends that "Hopkins has suffered actual prejudice because his guilty plea was not knowingly and voluntarily entered due to his significant mental impairments that prevented him from understanding the proceeding." Pet'r's Mem. 54. Further, Hopkins contends that "[a]llowing [his] guilty plea to stand violates the Due Process Clause of the Fourteenth Amendment and is a

fundamental miscarriage of justice." *Id.* at 58.

In order to demonstrate cause for the procedural default of his plea claim, Hopkins "must establish 'that some objective factor external to the defense impeded counsel's efforts' to raise the claim in state court at the appropriate time." *Breard*, 134 F.3d at 620 (quoting *Carrier*, 477 U.S. at 488). Hopkins is correct that ineffective assistance of counsel may be cause for procedural default. *McCleskey v. Zant*, 499 U.S. 467, 494 (1991); *Carrier*, 477 U.S. at 488. "Attorney error short of ineffective assistance of counsel, however, does not constitute cause and will not excuse a procedural default." *McCleskey*, 499 U.S. at 494; *Carrier*, 477 U.S. at 488 ("So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland v. Washington* . . . we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default."). Moreover, "the exhaustion doctrine . . . generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Carrier*, 477 U.S. at 488-89.

Hopkins contends that he argued in the state court that any waiver was attributable to ineffective assistance of counsel in both his Petition for Post-Conviction Relief and in his Application for Leave to Appeal the denial of post-conviction relief. Pet'r's Reply 22. As to his state post-conviction Petition, Hopkins concedes that he did not raise ineffective assistance of counsel as a separate claim. *Id.* Rather, in a section captioned "Waiver," Hopkins stated that "waiver should be excused because he relied entirely on counsel to protect his rights." Pet. Post-Conviction Relief 13. Although Hopkins discusses ineffective assistance of counsel in several other contexts, the only reference to ineffective assistance with regard to waiver is the sentence Hopkins quotes above. *See id.* 8–13. Certainly that brief mention cannot be considered

presentation of the issue as an independent claim. Second, his discussion of ineffective assistance was included in a "Statement of Waiver" in his Application for Leave to Appeal, not as an independent claim. App. for Leave to Appeal 14–15. That section follows Hopkins's enumerated claims of error. *See id.* 2–14. Hopkins did not present ineffective assistance of counsel with regard to waiver to the state courts as an independent claim, so the claim is not cause to excuse his procedural default. *See Carrier*, 477 U.S. at 488–89. The court finds that Hopkins has not demonstrated cause for his procedural default. Having so found, the court need not address whether he has shown prejudice as well. *Breard*, 134 F.3d at 620.

Nor can it be said that a fundamental miscarriage of justice has occurred. Because Hopkins cannot establish "cause and prejudice" sufficient to excuse his procedural default, he may obtain review of this claim only if he falls within the "narrow class of cases . . . implicating a fundamental miscarriage of justice." *Schlup v. Delo*, 513 U.S. 298, 315 (quoting *McCleskey*, 499 U.S. at 494) (alteration in original). "These are extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime." *McCleskey*, 499 U.S. at 494. In order to demonstrate "actual innocence," Hopkins must show that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Sharpe*, 593 F.3d at 377 (quoting *Schlup*, 513 U.S. at 324). "This assessment is based on a review of 'all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial.'" *Id.* (quoting *House v. Bell*, 547 U.S. 518, 538 (2006)). "It is not the district court's independent judgment as to whether reasonable doubt exists that the standard addresses; rather, the standard requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do." *Schlup*, 513 U.S. at 329.

Hopkins has not shown that he is actually innocent of the crimes for which he was adjudged guilty. He admitted his guilt during the plea and sentencing hearing and, through counsel, agreed with the State's recitation of the facts that would have been proven at trial. Plea & Sentencing Hr'g Tr. 17:18–21, 20:13–14, 29:20–33:10, ECF No. 22-7. Indeed, it is apparent that Hopkins knew the nature of his serious crimes and understood plea negotiations, nearly bringing those negotiations to a close by insisting the victim come to court to plead on his behalf that he should receive 25, rather than 35, years of incarceration. *Id.* at 4:18–8:4. Neither his assuredly slow intellect nor his mental health diagnosis and treatment leading up to trial rendered him incapable of planning increasingly violent attacks against his former girlfriend and of understanding and accepting responsibility for his actions that paralyzed her. *See* Plea Hr'g Tr. 30:2–33:4.

Although newly obtained test results may cast doubt on some of the evidence before the post-conviction court, they do not conclusively foreclose the likelihood that a reasonable juror would find Hopkins criminally responsible after considering all of the evidence. *See* Casciato Report, Pet'r's Mem. Ex. 21, ECF No. 21-9; James Report, Pet'r's Mem. Ex. 22, ECF No. 21-10. Neither his current diagnosis after a decade of mental health treatment during incarceration nor his amenability to therapy at Patuxent demonstrate his mental condition or address his competency and criminal responsibility at the time he entered his plea. Because Hopkins has not established cause for the procedural default of his guilty plea claim or that a miscarriage of justice would result from the Court's failure to consider the claim, the Court cannot address the merits. *See Breard*, 134 F.3d at 621. I will now return to the the merits of Hopkins's ineffective assistance of counsel claim.

### **Standard of Review**

The federal habeas statute, 28 U.S.C. § 2254, sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447, 455 (2005). The standard is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt. *Cullen*, 563 U.S. at 181 (internal quotation marks and citations omitted); *see also Harrington*, 562 U.S. 86, 102 (2011) ("If this standard is difficult to meet, that is because it was meant to be.").

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). Under the "unreasonable application" analysis pursuant to 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). A federal habeas court may not issue the writ simply because it concludes that the relevant state-court decision applied federal law incorrectly. *Renico v. Lett*, 559 U.S. 766, 767 (2010) (citing *Williams*, 529 U.S. at 411). Rather, that application must be "objectively unreasonable."

*Williams*, 562 U.S. at 411. Thus, "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Harrington*, 562 U.S. at 101 (quoting *Williams*, 529 U.S. at 410).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). A state court's "factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if 'reasonable minds reviewing the record might disagree' about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id.* (quoting *Rice v. Collins*, 546 U.S. 333, 341–42 (2006)). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.* at 379 (quoting 28 U.S.C. § 2254(e)(1)).

### Discussion

When a petitioner alleges a Sixth Amendment claim of ineffective assistance of counsel, he must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Representation is deficient if it falls below an objective standard of reasonableness, considering all the circumstances. *Id.* at 688.

To satisfy the first part of this standard, the petitioner must demonstrate that counsel's performance was not "within the range of competence normally demanded of attorneys in criminal cases." *Id.* at 687 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970) (internal quotation marks omitted)). The standard for assessing such competence is "highly deferential" and a "strong presumption" exists "that counsel's conduct falls within a wide range of reasonable professional assistance." *Id.* at 689. A federal court's consideration of an ineffective assistance of counsel claim arising from state criminal proceedings is further limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001). "There is a 'strong presumption' that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than 'sheer neglect.'" *Harrington*, 562 U.S. at 109 (quoting *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003)); *see also Sharpe*, 593 F.3d at 383 ("Counsel is not required to engage in the filing of futile motions." (quoting *Moody v. Polk*, 408 F.3d 141, 151 (4th Cir. 2005) (internal quotation marks omitted))). "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

The second prong requires the court to consider whether "counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable" and whether there was a reasonable probability that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 687, 694. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper

functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Id.* at 686. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. A court need not address both *Strickland* prongs if the defendant furnishes sufficient evidence regarding one prong to defeat the claim. 466 U.S. at 697.

The same principles apply when counsel advises the defendant to accept a guilty plea. *See Hill v. Lockhart*, 474 U.S. 52, 57 (1985). The *Hill* Court held that "the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Id.* at 58. In the context of guilty pleas, the first prong of the *Strickland* test is nothing more than a restatement of the standard of attorney competence stated above. *Hill*, 474 U.S. at 58.

> The second, or "prejudice" requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Id.* at 59. The *Hill* Court reiterated that, as stated in *Strickland*, "these predictions of the outcome at a possible trial, where necessary, should be made objectively . . . ." *Id.* at 59–60; *see also Padilla v. Kentucky*, 559 U.S. 356, 372 ("[T]o obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.").

Hopkins argues that both of his trial lawyers "unreasonably failed to investigate Hopkins's mental state and obtain an independent mental evaluation . . . despite a plethora of evidence that Hopkins was mentally ill and mentally retarded." Pet'r's Mem. 25–26. This, Hopkins argues, "was contrary to and an unreasonable application of *Strickland*'s principles," because "[c]ounsel's duty to investigate extends beyond merely filing pleadings leading to a

16

court-ordered evaluation." *Id.* at 33. Hopkins argues that that the Perkins Report "was rich with information that should have triggered further investigation and evaluation." *Id.* at 27.

The Perkins Report itself, which was entered as Petitioner's Exhibit 2 at the February 10, 2012 post-conviction hearing, Post-Conviction Hr'g Tr. 2:16, belies this argument. It found that "Mr. Hopkins evidences **malingering** (intentional production of false or grossly exaggerated symptoms), as he reports several symptoms that are inconsistent. These inconsistencies in his clinical presentation and behavior have been observed and documented by other evaluators, as well as present examiners." Perkins Report 10. The report concluded that Hopkins was both competent to stand trial and criminally responsible. *Id.* at 13. Hopkins argues that "[t]he Perkins Report is not only internally inconsistent, but is entirely inconsistent with Dr. Levinson's evaluation and Dr. Bonieski's observations [included in the Report]. Both inconsistencies should have caused objectionably [sic] reasonable counsel to conduct a further investigation and seek an independent evaluation. Instead, counsel here did nothing." Pet'r's Mem. 28.

In fact, one of Hopkins's trial attorneys, Thomas Kane, testified before the post-conviction court that, at his client's request, he sought an independent evaluation through the Office of the Public Defender, but that the Office denied the request. Post-Conviction Hr'g Tr. 34:15–19, 49:1–13. Kane referred to this request as "*pro forma*" because he also expressed his opinion to superiors that an independent evaluation was unnecessary. *Id.* at 58:22. In his testimony before the post-conviction court, Kane explained:

> I didn't see any need for it. I didn't think that since I, myself, in all of my conversations with him and my meetings with him, I couldn't detect any mental difficulty. He did continuously indicate that he suffered from depression. He asked me to get all of the history of his medical records throughout various places in Baltimore. I filed those all over the place. And the only one that I recall that could find anything on him was University of Maryland. I did pick up those records. And the only thing in that history, again, showed depression. Nothing with respect to any mental difficulties beyond that. Which was consistent with

17

> what the [Perkins] report indicated and was consistent with my own experience with him.

*Id.* at 34:18–35-6.

> The post-conviction court, having properly laid out the *Strickland* standard found:
>
> In this case, Petitioner's counsel filed Notices of Incompetency to Stand Trial and Pleas of Not Criminally Responsible by Reason of Insanity. . . . Petitioner was found competent to stand trial as well as criminally responsible. Certainly, trial counsel performed competently. They filed the appropriate pleadings leading to a court-ordered evaluation. Their actions clearly were "reasonable under prevailing professional norms." Simply because the results of the evaluation were not favorable to Petitioner does not warrant a finding of ineffective assistance of counsel. Consequently, the Court denies this claim for relief.

Statement & Order 4 (citations omitted) (quoting *State v. Borchardt*, 914 A.2d 1126, 1136 (Md. Ct. App. 2007)). That conclusion was not contrary to clearly established federal law under *Strickland* and *Hill*. The state court accurately stated the *Strickland* standard and followed that standard in reaching its conclusion that Hopkins's counsel performed competently. While Hopkins argues that filing pleadings, even though those pleadings did lead to a court-ordered evaluation, does not fulfill counsel's duty to investigate, it must be remembered that *Strickland* states that "counsel has a duty to make reasonable investigations *or* to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691 (emphasis added). Here, Kane honored his client's request to seek an additional evaluation but advised his superiors that he believed the evaluation was unnecessary based on his extensive personal interactions with his client and available medical evidence. Kane's conduct was not unreasonable considering all the circumstances.

## Conclusion

The instant petition for habeas corpus relief will be denied and this case dismissed by a separate order. A habeas petitioner has no absolute entitlement to appeal a district court's denial

of his motion. *See* 28 U.S.C. § 2253(c)(1). A certificate of appealability ("COA") may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). A petitioner satisfies this standard by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" *Miller-el v. Cockrell*, 537 U.S. 322, 335–36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). When a district court dismisses a habeas petition solely on procedural grounds, a COA will not issue unless the petitioner can demonstrate both "that jurists of reason would find it debatable whether the petition states a valid clam of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The court will not issue a COA because Hopkins has not made the requisite showing.[3]

A separate order follows.

09/29/2016
Date

Paul W. Grimm
United States District Judge

---

[3] Denial of a COA in the district court does not preclude Hopkins from requesting a COA from the United States Court of Appeals for the Fourth Circuit.